

FILED

12 DEC 11 PM 1:06

CLERK U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

SOBER CAMEL, LLC
    Plaintiff,

v.

SOBER CAMEL, LLC and
JENNIFER RUSSO
    Defendants,

Case No.:

8:12-CV-2787-T-30TGW

## COMPLAINT FOR DAMAGES

Comes now Plaintiff Sober Camel, LLC of Florida ("SCFL") for its complaint ("Complaint") against Sober Camel, LLC of Massachusetts ("SCMA") and Jennifer Russo ("Russo") (collectively "Defendants") and alleges as follows:

### INTRODUCTION

1.    This action is for a Declaratory Judgment of trademark rights under the Declaratory Judgments Act, 28 U.S.C. §§ 2201 and 2202, and under the Lanham Act (15 U.S.C. §1125(a) and (c)). It is also an action for Cybersquatting under the Anti-Cybersquatting Piracy Act ("ACPA") (15 U.S.C. 1125(d)); for Unfair Competition under the Lanham Act (15 U.S.C. 1125(a)); and for various counts under Florida law.

### PARTIES, JURISDICTION, AND VENUE

2.    Plaintiff SCFL, is a Limited Liability Company duly organized and existing under the laws of the State of Florida, with its principal place of business in Pinellas County, 801 West Bay, #711, Largo, Florida 33770.

3.  Upon information and belief, Defendant SCMA, is a Limited Liability Company duly organized and existing under the laws of the State of Massachusetts, with its principal place of business in Norfolk County, 27 Bird Street, Foxboro, Massachusetts 02035.

4.  Upon information and belief, Defendant Russo is a Massachusetts resident having her principal place of residence at 43 Buckboard Dr., Walpole, Massachusetts 02081.

5.  This Court has jurisdiction over actions for Declaratory Judgment of trademark rights count pursuant to the Declaratory Judgments Act 28 U.S.C. §§ 2201 and 2202, and the Lanham Act 15 U.S.C. §1125(a) and (c). This Court also has jurisdiction over matters involving Cybersquatting and federal Unfair Competition Counts pursuant to 28 U.S.C. §§ 1338(a),(b). Likewise, this Court has jurisdiction over the Florida law Counts pursuant to 28 U.S.C. § 1367.

6.  The Court has personal jurisdiction over Defendants because Defendants' tortious acts of trademark infringement and unfair competition ("Acts") all occurred either directly or indirectly within this judicial district (and elsewhere in the State of Florida and elsewhere in the United States).The Acts caused damage to persons, entities, and/or property within this judicial district, and said Acts further targeted a direct competitor of Defendants, one that Defendants knew resided in Florida. Defendants also knew that the harmful effects of these Acts would be felt in Florida.

7.  Venue is proper pursuant to 28 U.S.C § 1391(b) because Defendants are subject to personal jurisdiction in this judicial district and because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated in, this judicial district.

## ALLEGATIONS COMMON TO ALL COUNTS

8. Plaintiff, together with its predecessor in interest, has sold a distinctive line of addiction recovery products on the Internet under the "Sober Camel" trademark since 1997. *See* Exhibit A, December 12, 1998 Internet "Wayback Machine" screenshot from www.sobercamel.com, attached hereto and incorporated herein by reference.[1] Plaintiff's predecessor in interest, Christy L. Lonnon ("Lonnon"), formerly did business as a sole proprietor until she formed SCFL on March 17, 2011 in the State of Florida. *See* Exhibit BB, formation of Sober Camel LLC in Florida, attached hereto and incorporated herein by reference. Lonnon is the sole member of SCFL, therefore, for the purpose of clarity, Lonnon and Plaintiff will be used interchangeably.

9. Lonnon first filed for registration of the "Sober Camel" trademark ("the Mark" or "Mark")[2] on October 1, 2000 with the United States Patent and Trademark Office ("USPTO"). Plaintiff's application was published for opposition on July 2, 2002 and was approved on September 24, 2002. *See* Exhibit B, original USPTO registration certificate for Serial Number 78028500, attached hereto and incorporated herein by reference; *see also* Exhibit C p.2, ¶5, Affidavit of Lonnon, attached hereto and incorporated herein by reference.

10. Shortly after registration, Lonnon was contacted by Margaret Kingman ("Kingman"). Kingman explained she owned Sober Camel, Inc., a newly formed Massachusetts corporation (formed August 14, 2002) and wanted to know Lonnon's intentions regarding use of the Mark. Plaintiff indicated her intent was to use the Mark to promote and sell addiction recovery products on the Internet through www.sobercamel.com ("Website"). Lonnon further

---

[1] This is the earliest screenshot that could be found in the "Wayback Machine" archive.
[2] Plaintiff originally applied for, and registered, a "Sober Camel" trademark for greeting cards sold in 2000. Plaintiff later applied for, and registered, a "Sober Camel" servicemark for "On-line retail gift shops."

3

indicated that she had no interest in opening brick and mortar locations anywhere in the United States. Kingman indicated that she did not intend to conduct business on the Internet; hence the parties, without the assistance of counsel, mutually agreed that there were no conflicts of interest between the Mark and the name of Kingman's newly incorporated business. *See* Exhibit C p.2, ¶¶6-8.

11. In or around October 2009 Lonnon went on the USPTO website to change the address associated with the Mark and discovered that the registration for the Mark had been cancelled on May 16, 2009, for lack of a Section 8 filing. *See* Exhibit D, USPTO query showing information pertaining to the cancelled Mark, attached hereto and incorporated herein by reference; *see also* Exhibit C p.3, ¶9.

12. Lonnon originally registered the Mark without the assistance of counsel and therefore was unaware of the Section 8 filing requirement. After realizing that the Mark had been canceled, Lonnon immediately contacted the USPTO and was informed that her only option for maintaining control of the Mark was to reapply. Lonnon reapplied for the Mark on October 23, 2009, the application was published for opposition on April 6, 2010 and approved on June 22, 2010. *See* Exhibit E, 2010 registration of the Mark, attached hereto and incorporated herein by reference; *see also* Exhibit C p.3, ¶11. Lonnon subsequently assigned all right, title, and interest in the Mark to SCFL. *See* Exhibit AA, USPTO recordation of assignment from "Sober Camel" (Lonnon's DBA) to Sober Camel LLC (Plaintiff), attached hereto and incorporated herein by reference.

## THE DISPUTE BETWEEN THE PARTIES

13. In the mid to late 1990's Lonnon made a living designing and hosting websites and became interested in starting her own Internet ecommerce site. Lonnon eventually partnered

4

with Janet Inman ("Inman") who was setting up a shop called Sober Camel, focused on addiction recovery merchandise. Lonnon's informal partnership with Inman was the genesis of the "Sober Camel" ecommerce Website. The Website went "live" on October 29, 1997 and has been operating online continuously since that date. *See* Exhibit F, domain name registration information pertaining to www.sobercamel.com, attached hereto and incorporated herein by reference; *see also* Exhibit C pp.1-2, ¶¶2-3.

14. On or about July 2010, Lonnon became aware of a domain name (www.thesobercamelma.com or "Infringing Domain"), that was using the Mark. Lonnon immediately notified the site owner via a cease and desist letter ("C&D Letter") and corresponding email. The C&D Letter was sent to SCMA, at Sober Camel, 27 Bird Street, Foxborough, MA 02035. *See* Exhibit G, Lonnon's notice of infringement to SCMA, attached hereto and incorporated herein by reference; *see also* Exhibit C p.3, ¶14.

15. By way of the C&D Letter, Lonnon notified SCMA that SCFL was the registered owner of the Mark and had been using the Mark on its Website since 1997. The C&D Letter demanded that SCMA discontinue its use of the Mark. *See Id.*

16. Kingman contacted Lonnon shortly after Lonnon had sent the C&D Letter to SCMA. Lonnon informed Kingman that someone had opened another Sober Camel in Massachusetts and was using the Mark on the Internet. *See* Exhibit C p.3, ¶15.

17. Kingman explained to Lonnon that she had sold the store and that the new owner moved it to a different location. Lonnon informed Kingman that she sent the C&D Letter and reminded Kingman of the agreement ("Agreement") between the parties. Kingman

acknowledged the existence of the Agreement and indicated that she would discuss the Agreement with SCMA.[3] *See Id.*

18.     Upon information and belief, Kingman spoke with SCMA regarding the Agreement. Lonnon hoped, and had reason to believe, that SCMA would simply allow the Infringing Domain to expire after Kingman informed SCMA of the Agreement. Lonnon's belief was predicated on the fact that the website on the Infringing Domain did not appear to be actively under construction. However, the Infringing Domain was renewed in May of 2011. *See Id.* at ¶15.

19.     Sometime in December of 2011 Lonnon decided to take legal action and contacted counsel. On or about January 23, 2012 Plaintiff's counsel sent a second cease and desist letter to SCMA. *See* Exhibit H, cease and desist letter from Plaintiff's counsel, attached hereto and included herein by reference.

20.     On January 30, 2012 Richard M. Russo, Treasurer of SCMA, sent Plaintiff's counsel an email containing information SCMA purportedly thought would settle the issue. *See* Exhibit I, email correspondence from Richard Russo, attached hereto and incorporated herein by reference. The principal "evidentiary" material, other than business entity registration forms, was a USPTO report pertaining to the Leahy-Smith America Invents Act ("AIA"). *Id.* The AIA expands "prior user rights" regarding patent defenses and has nothing at all to do with trademark law. *Id.*

21.     Plaintiff's counsel responded to Russo's email on that same day, stating that he had reviewed the documents and that the documents were not pertinent to SCFL's allegations of trademark infringement against SCMA. Plaintiff's counsel further stated "[w]e have no problem

---

[3] Upon information and belief, after reviewing documents on the Massachusetts Secretary of State's website, Plaintiff avers that what Kingman sold to SCMA were her store's tangible assets and not her business in its entirety.

with you using those words as the name of an entity in MA. We do have a problem with you using this Mark, or related marks, to sell goods or services on the Internet," essentially reiterating the decade long Agreement between Lonnon and Kingman.

22. On March 12, 2012 Plaintiff's counsel received email correspondence from SCMA's counsel. *See* Exhibit J, SCMA counsel's correspondence, attached hereto and incorporated herein by reference. SCMA's counsel implied in the correspondence, *inter alia*, that SCFL's 2009 USPTO registration of the Mark was fraudulent, allegedly "because of Lonnon's knowledge of Kingman." *Id.* SCMA's counsel further indicated that SCMA would petition to have SCFL's registered Mark cancelled. *Id.* In addition, prior to sending this correspondence, and in **bad faith breach** of the Agreement that SCFL had with Kingman, SCMA had already applied to register the "Sober Camel" mark with the USPTO, purportedly as a procedural step to clear the way for a Petition to Cancel. *Id.*

23. Also, in a brazen act of extortion against the legitimate owner of the Mark, Defendant's correspondence of March 12, 2012 states as follows: "**[t]o the extent that Lonnon wishes to continue using SOBER CAMEL in connection with selling medallions online, Sober Camel [SCMA] is willing to discuss the possibility of entering into private settlement discussions to address that issue.**" [emphasis added]. *Id.*

24. Upon information and belief, and as discussed *infra*, SCMA's claim that "its predecessors...first began using the trademark SOBER CAMEL in connection with retail store services at least as early as January 1, 1987" is simply false on its face. *Id.* SCMA cannot establish common law continuous use in commerce going back to 1987. For example, there are no facts that SCMA's alleged "predecessor in interest" Kingman ever engaged in interstate

7

commerce when she owned her Rhode Island ("RI") Sober Camel store.[4] Further, assuming *arguendo*, that common law trademark rights to a store in RI would automatically transfer to a similar store owned by a different business entity incorporated in Massachusetts ("MA"), the move to MA clearly broke continuity of trademark use, since there was, upon information and belief, about a 5 month delay between the time Kingman closed the RI store and the time she opened the MA store. *See Id.*; *see also* Exhibit K p.2, query from RI's Secretary of State's website showing revocation notice for The Sober Camel of R.I. Inc., on July 16, 2002, attached hereto and incorporated herein by reference. The fact of the matter is that whatever "Sober Camel" common law trademark rights Kingman established in RI, said rights were discontinued when she incorporated a different entity and opened a different store in MA in 2002.

25.     Upon information and belief, SCMA's claim of continuous use is further called into question because SCMA had to ask Kingman's consent to use the name Sober Camel when it registered its LLC in MA. As alleged *supra*[5], there are no facts that show that SCMA purchased Kingman's business in its entirety, but rather it purchased an enumerated list of Kingman's tangible assets. Kingman has indicated that she never sold the right to use the Sober Camel trademark. *See* Exhibit C p.5, ¶22; *see also* Exhibit L, letter from Kingman to the Secretary of the Commonwealth granting consent, attached hereto and incorporated herein by reference.

26.     On March 29, 2012 counsel for SCMA and counsel for SCFL participated in a conference call in an attempt to amicably settle the dispute.

27.     On April 3, 2012 SCMA's counsel notified Plaintiff's counsel of a settlement offer. Plaintiff rejected SCMA's offer because it called for Plaintiff to give up all rights in its

---

[4] Upon information and belief, Kingman owned a Sober Camel store in RI until February 2002.
[5] *See* fn. 1.

Mark. *See* Exhibit M, settlement offer from SCMA, attached hereto and incorporated herein by reference.

28. Plaintiff proposed a counteroffer that essentially maintained the status quo that existed with SCMA's alleged predecessor in interest, but in addition, Plaintiff indicated that it would not oppose the registration of "Sober Camel" for "brick and mortar" stores. *See* Exhibit N, attached hereto and incorporated herein by reference.

29. On April 26, 2012 SCMA's counsel notified Plaintiff's counsel that SCMA had rejected Plaintiff's counteroffer in its entirety, and further stated that: "as a courtesy I would like to let you know that your client can expect to receive a letter from Sober Camel [SCMA] stating that any **prior agreements** between any of Sober Camel's predecessors and Lonnon regarding the SOBER CAMEL trademark **will be terminated** in three (3) months' time, and any future agreements between the parties must be in writing. [emphasis added]. *See* Exhibit O, letter from SCMA's counsel, attached hereto and incorporated herein by reference.

30. On May 5, 2012 Plaintiff received correspondence from Defendant Russo. Russo stated, *inter alia*, as follows: "[i]n the circumstances, please be advised **that any agreements that may have been in place between you and any of our predecessors are hereby terminated effective three (3) months from the date of this letter.**" [emphasis added]. *See* Exhibit P, correspondence from Russo, attached hereto and incorporated herein by reference.

31. Upon information and belief, Kingman had knowledge of the fact that she was not the first to use "Sober Camel" for addiction recovery products in MA. Kingman, in her 2012 conversations with Lonnon admitted as much. She revealed to Lonnon that she knew of Sober

9

Camel of America, Inc., and admitted that was how she settled on the name.[6] See Exhibit C p.5, ¶22.

## SOBER CAMEL OF MASSACHUSETTS BACKSTORY

32.   SCMA was organized on May 19, 2010, listing as its Managing Member Defendant Russo, at a business location of 43 Buckboard Drive, Walpole MA. *See* Exhibit Q, SCMA registration in MA, attached hereto and incorporated herein by reference.

33.   Upon information and belief, the address in ¶ 32 is the personal residence of Defendant Russo and functioned as the primary place of business of SCMA until early July 2010, at such time as Defendants occupied the current SCMA store location at 27 Bird St. Foxboro, MA. *See* Exhibit R, screenshot from Infringing Domain, attached hereto and incorporated herein by reference.

34.   Upon information and belief, no use of the Mark was made during the time that SCMA maintained its principal place of business at Defendant Russo's residence.

35.   Assuming *arguendo*, that SCMA in fact purchased the Sober Camel mark from Kingman, SCMA could not have done so without, at the same time, acquiring the **contractual restraints**[7] on the use of the Sober Camel mark that were part of the Agreement between Kingman and Lonnon. Therefore, SCMA breached the Agreement when it applied for the Sober Camel mark as discussed *infra*. SCMA admitted that it knew of the Agreement between Kingman and Lonnon and its unilateral attempt to cancel a contract has no basis in law. *See* Exhibit C pp.2-3, ¶8; *see also* Exhibit P.

---

[6] Sober Camel of America, Inc. was incorporated in MA on July 9, 1985.
[7] The existence of a contract between Kingman and Lonnon is indisputable because all requisite elements of contract formation are present (i.e. offer, acceptance and consideration), and because Kingman and Lonnon both acknowledged the existence of the contract, and its terms and conditions. Further, there was no discussion regarding a "senior user" at time of contract formation. *See* Exhibit C pp.2-3, ¶8.

36.     Upon information and belief, Defendants' alleged predecessor in interest Kingman closed her SCRI store (and last collected sales tax in the State of RI) in February 2002—her MA corporation was not organized until August 14, 2002. *See* Exhibit U, Kingman's MA Sober Camel, Inc. incorporation, attached hereto and incorporated herein by reference. Therefore, there was a clear break in continuity of use regarding the "Sober Camel" trademark *on any store. See generally* Exhibit K p. 2; *see also* Complaint ¶ 24.

37.     Upon information and belief, Defendants' alleged predecessor in interest, Kingman, after having her RI corporate certificate permanently revoked in 2002, apparently decided to formally dissolve her Sober Camel Rhode Island ("SCRI") corporation on April 4, 2005. *See* Exhibit S, query from RI's Secretary of State's website showing dissolution of The Sober Camel of R.I. Inc., attached hereto and incorporated herein by reference.

38.     Assuming *arguendo*, as discussed *supra*, that common law "trademark rights to a store in RI would automatically transfer to a similar store owned by a different business entity incorporated in MA,"[8] which is a specious assertion at best, Kingman's own conduct unequivocally indicates that the **Defendants' assertion of continuous use is false on its face, given the discontinuity of use between the time Kingman closed her RI store and the time she opened her MA store.** *See Id.* Further, Kingman voluntarily dissolved her Sober Camel, Inc. MA corporation on March 14, 2011, nearly one year after SCMA started operations[9], providing additional evidence that Kingman had not in fact sold the Sober Camel mark to SCMA. *See* Exhibit T, Kingman's voluntary dissolution in MA, attached hereto and incorporated herein by reference.

---

[8] Kingman never registered the Sober Camel mark with the USPTO, and therefore only ever acquired common law rights in RI and in MA.

[9] Upon information and belief, both Kingman and SCMA concurrently used the Mark during this time, providing further evidence that Kingman never sold the Mark to SCMA.

11

39. Upon information and belief, SCMA committed fraud in its March 8, 2012 trademark application #85563922 because Defendant Russo signed the application for the Sober Camel mark with knowledge that common law seniority rights could not be established and therefore SCMA was clearly and unequivocally junior to SCFL's Mark at the time of signing. *See* Exhibit X, SCMA's Sober Camel trademark application, attached hereto and incorporated herein by reference.[10]

## DEFENDANTS' UNLAWFUL CONDUCT

40. As alleged herein, Defendants' registered the Infringing Domain in a **bad faith attempt to profit from the Mark and to extort funds from Plaintiff for continued use of its own Mark**, under a specious claim of trademark seniority rights.

41. Upon information and belief Defendants also used the Mark to unfairly compete with Plaintiff, diverting Internet traffic from Plaintiff's website. Also, Defendants' use of the Mark on the Infringing Domain misrepresented an affiliation between Plaintiff and Defendants.

42. Assuming *arguendo*, as Defendants' allege, that Defendants did in fact purchase the Sober Camel mark from Kingman, said mark had contractual and common law restraints associated with it, given the Agreement between Kingman and Lonnon, and the geographically limiting scope inherent in common law trademark rights. Therefore, Defendants unlawfully, and in **bad faith**, unilaterally attempted to rescind the Agreement for their own economic gain, and by so doing, breached the Agreement. Subsequently, by way of the breach, Defendants attempted to usurp traffic from Plaintiff's website through an infringing use of the Mark, and likewise attempted to extort money from Plaintiff. *See generally* Complaint ¶35.

43. Defendants' alleged predecessor in interest (Kingman) agreed not to create an Internet presence using the Sober Camel mark. Kingman honored said promise for eight years

---

[10] Exhibits V, and W are used exclusively in Lonnon's Affidavit. *See generally* Exhibit C.

12

and thereby induced Plaintiff to continue to invest in its online business. Defendants, as Kingman's alleged successors in interest, breached said promise by creating a presence on the Internet in 2010 using the Infringing Domain.

## COUNT I – DECLARATORY JUDGMENT
[Plaintiff Owns the Registered "Sober Camel" Trademark]

44. Plaintiff incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

45. An actual controversy has arisen, and now exists, regarding the ownership of the Mark and whether Defendants breached a contract regarding said Mark. Plaintiff desires a judicial determination of these issues.

46. Plaintiff has used the Mark continuously to sell addiction recovery products on the Internet since 1997.

47. Upon information and belief, Defendants, up to and including the commencement of this action, have never sold any products on the Internet.

48. Upon information and belief, Defendants have only used the Mark with respect to brick and mortar gift stores in Massachusetts and any claims that Defendants are the senior user of the Mark are specious and entirely without merit. Further, Defendants cannot establish common law ownership of the Mark, under Massachusetts Law, before 2010.

49. Assuming, *arguendo*, that Defendants' could establish a senior right of ownership to the Mark at common law, Defendants' alleged predecessor in interest passively consented to Plaintiff's use of the Mark on the Internet for over a decade, and thereby waived any senior rights of ownership; therefore, the equitable doctrine of laches bars Defendants' from asserting claims on the Mark.

50. In 2007, but for the fact that Plaintiff was unaware that it could have filed a declaration of incontestability under section 15 of the Lanham Act, the Mark would have been declared incontestable by the USPTO. *See generally* 15 U.S.C. § 1064.

51. But for the fact that Plaintiff was unaware of the Lanham Act's Section 8 filing requirement, Plaintiff's registration would have been continuous since 2002 and eligible for a declaration of incontestability. *See generally* 15 USC § 1058.

52. Plaintiff is entitled to a Declaration and Judgment that it is the owner of the Mark for "**On-line** retail gift shops" and a Declaration that Defendants' USPTO Petition to Cancel the Mark should be dismissed with prejudice.

53. A Declaration is necessary and appropriate at this time so that Plaintiff may continue its business activities on the Internet unimpeded by Defendants' unlawful use of its Mark.

### COUNT II – TRADEMARK INFRINGEMENT (CYBERSQUATTING)
**[Damages under the ACPA Title 15 U.S.C. § 1125(d)]**

54. Plaintiff incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

55. Upon information and belief, through the mechanics of acquiring a domain name and basic online due diligence, Defendants knew or should have known of Plaintiff's online store ("Online Store") when they registered the Infringing Domain on May 8, 2010. Plaintiff has had, and continues to have, a dominant position in the rankings of the leading search engines for recovery tokens, medallions and coins and has been the mainstay of the online addiction recovery business for well over a decade.

56. Upon information and belief, Defendants' alleged predecessor in interest (Kingman) informed Defendants of Plaintiff's Online Store (www.sobercamel.com) at the time

Defendants purchased her tangible assets, and likewise informed Defendants of the contractual Agreement between herself and Lonnon, Defendants' admitted that said Agreement existed because Defendants unilaterally attempted to rescind it in 2012. *See* Complaint ¶35. Therefore, Defendants were clearly aware of the Online Store when they registered the Infringing Domain. Further, upon information and belief, SCMA has registered an additional domain name containing the Mark (i.e. sobercamelbookstore.com).

57. Defendants' registration of the Infringing Domain (and other similar domains containing the Mark now known or to be identified through discovery) (collectively Infringing Domains) was in **bad faith**—an unlawful attempt to use the Mark to divert customers from Plaintiff's Online Store, knowing that it would harm the Mark's goodwill, for Defendants own commercial gain. Therefore, Defendants' conduct entitles Plaintiff to an order forfeiting Defendants' rights in the Infringing Domains and transfer of same to Plaintiff, as well as damages in an amount to be determined at trial or statutory damages available under The Anticybersquatting Consumer Protection Act ("ACPA"). *See* 15 U.S.C. § 1125(d).

## COUNT III – UNFAIR COMPETITION
**[Damages for Unfair Competition under the Title 15 U.S.C. § 1125(a)]**

58. Plaintiff incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

59. Through thousands of hours of hard work, Plaintiff has created an Online Store that is widely recognized as a leader in addiction recovery products on the Internet, as evidenced by the hundreds of customers that purchase products from SCFL on a monthly basis from across the United States.

60. Defendants' unauthorized use of the Mark in the Infringing Domains, and on the site hosted on the Infringing Domain, as alleged herein, constitutes unfair and unlawful

competition under 15 U.S.C. § 1125, and misrepresents an affiliation between Plaintiff and Defendants. It also misdirects Internet traffic to Defendants' website instead of Plaintiff's.

61. Defendants' unauthorized use of the Mark has caused irreparable harm to Plaintiff, and any continued use of the Mark will continue to add to the irreparable harm already caused. As a direct and proximate cause of the foregoing unlawful conduct, Defendants have reaped monetary gain. Therefore, Plaintiff is entitled to full disgorgement of any profits thereby obtained.

## COUNT IV – BREACH OF CONTRACT
### [Damages for Breach of Contract]

62. Plaintiff incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

63. On or about October 2002, Plaintiff and Defendants' predecessor in interest (Kingman) entered into the Agreement whereby Plaintiff agreed not to open brick and mortar gifts stores in MA, RI, or anywhere in the United States, and Kingman agreed not to sell goods online or otherwise create a presence on the Internet. Said Agreement was honored by the parties for a period of over eight years, until Defendants breached the Agreement by creating a presence on the Internet on or about May 2010.

64. Defendants' ex post facto bad faith attempt to unilaterally rescind said Agreement has no basis in law—it directly repudiates and unilaterally attempts to modify the terms of a long standing Agreement without consideration and without the assent of the Plaintiff.

65. Defendants' ex post facto attempt to modify the Agreement has caused Plaintiff damages in an amount to be proven at trial.

## COUNT V – PROMISSORY ESTOPPEL
### [Damages for Reliance]

66. Plaintiff incorporates by reference all the allegations set forth in this Complaint as if fully set forth herein.

67. The Restatement (Second) of Contracts § 90 states as follows: "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

68. On or about October 2002, Defendants' predecessor in interest (Kingman) promised Plaintiff *not to sell addiction recovery goods or otherwise create a presence on the Internet using the Sober Camel mark*.

69. Kingman, as promisor, and as Defendants' alleged predecessor in interest, made a promise to Plaintiff. Through this promise Plaintiff was reasonably induced to continue to build out, and invest in the Online Store. Defendants, as Kingman's alleged successors in interest, are not free to rescind a promise upon which Plaintiff has relied on for over eight years.

70. Plaintiff relied on Kingman's promise to its detriment. Defendants have now engaged in conduct that rescinds the promise, and threatens the investment based on it. Therefore, Plaintiff is entitled to relief in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and other relief against the Defendants, jointly and severally, as follows:

    A. On Count I: (1) an Order be entered declaring that Plaintiff is the sole owner of the registered Mark and that Plaintiff is entitled to use the Mark in whatever way

its rights enable it, without interference from Defendants; (2) an Order dismissing, with prejudice, Defendants' Petition to Cancel with the USPTO; and (3) such further and other relief be granted, including costs of suit, as may be just and equitable under the circumstances.

B. On Count II: award (1) injunctive relief in the form of an Order transferring the **all Infringing Domains** to the Plaintiff; (2) actual, incidental and consequential damages, including lost profits, loss of use, annoyance, and inconvenience OR statutory damages not less than $1,000.00 and not more than $100,000.00, as the Court considers just, pursuant to 15 U.S.C. § 1117; (3) attorney's fees and costs incurred in prosecuting this action pursuant to 15 U.S.C. § 1129(b); and (4) and such other and further relief that the Court finds just and equitable.

C. On Count III: award (1) actual damages and profits for Defendants' acts of Unfair Competition pursuant to 15 U.S.C. § 1117; (2) Plaintiff's reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117; and (3) grant Plaintiff any other further relief this Court deems just and proper.

D. On Count IV: award (1) expectation, compensatory, or restitution damages in an amount that makes Plaintiff whole as a result of Defendants' breach of contract; and (2) Plaintiff's reasonable attorneys' fees and costs of this action, and that those costs are taxed against the Defendant, including prejudgment interest as of the date of the filing of this complaint.

E. Count V: award (1) Plaintiff's reliance damages for having detrimentally relied on Defendants' promise, by way of Defendants' alleged predecessor in interest, not to create an Internet presence under the Sober Camel mark, but for said promise

Plaintiff may not have continued to invest thousands of hours, and a significant amount of financial resources, into SCFL's Online Store.

F. For such other and further relief as this Court deems just and proper.

WHEREFORE, the Plaintiff, Sober Camel LLC, prays for judgment against the Defendants, Sober Camel, LLC and Jennifer Russo, jointly and severally.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby designates Tampa, FL as the place of trial of the above-styled matter.

Respectfully submitted,

By: *[signature]*
Carlos A. Leyva
Florida Bar No. 0051017
**DIGITAL BUSINESS LAW GROUP, P.A.**
1001 Starkey Rd. #18
Largo, FL 33771
(800) 516-7903 phone
(800) 257-9128 fax
cleyva@digitalbusinesslawgroup.com

**ATTORNEY FOR PLAINTIFF
SOBER CAMEL, LLC**